UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAMARIS GONZALEZ,

    Plaintiff,

v.                                  Case No:   6:15-cv-334-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff, Damaris Gonzalez, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

**A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for SSI on February 1, 2011, alleging disability beginning November 1, 2010. (Tr. 200). Plaintiff's application was denied initially on March 4, 2011, and upon reconsideration on July 11, 2011. (Tr. 98-100, 104-05). Plaintiff requested a hearing and an administrative hearing was held before Administrative Law Judge M. Dwight Evans (the "ALJ") on March 29, 2013. (Tr. 46-86). On September 20, 2013, the ALJ entered an unfavorable decision finding that Plaintiff was not disabled. (Tr. 29-45). Plaintiff appealed the ALJ's decision and, on December 31, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7). Plaintiff initiated this action by filing a Complaint (Doc. 1) on February 27, 2015.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2011, the application date. (Tr. 31). At step two, the ALJ found that Plaintiff had the following severe impairments: arthritis, fibromyalgia, and intermittent headaches. (Tr. 31). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 33).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") through the date last insured to:

> perform less than full range of light work as defined in 20 CFR 416.967(b). The claimant can continuously lift and carry up to 10 pounds, frequently lift and carry up to 20 pounds, and occasionally carry 21-50 pounds. At one time, she can sit up to 1 hour without interruption, stand 1 hour without interruption, walk for 1 hour without interruption, and can sit, stand, or walk for up to 6 hours each in an 8-hour workday, with no assistive device required. The claimant can use either or both of her hands continuously without interruption for reaching overhead, reaching in all other directions, handling, fingering, felling, pushing, and pulling. She can use her feet continuously for operations such as foot controls. The claimant can continuously stoop, balance, kneel, crouch, and crawl as well as continuously climb stairs, ramps, ladders, and scaffolds  The claimant has no environmental limitations.  She can continuously be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme activities of daily living such as shopping, traveling without a companion, walking without an assistive device, walking a block at a reasonable pace on rough our [sic] uneven surfaces.  She is capable of using standard public transportation, climbing a few steps at a reasonable pace with the use of a single handrail, preparing a simple meal and feeding herself, caring for her personal hygiene, and handling or using paper files.

(Tr. 34). At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a floral designer, private investigator, and merchant patroller, as these jobs do not require the performance of work-related activities precluded by the Plaintiff's RFC. (Tr. 37). The ALJ proceeded to step five, and made the alternative finding that even if Plaintiff had an even more limited RFC than found by the ALJ, Plaintiff would still be capable of performing the jobs of parking lot attendant, ticket seller, and sales attendant. (Tr. 38-39). The ALJ concluded that Plaintiff had not been under a disability from September 20, 2013, the alleged onset date, through the date of the ALJ's decision. (Tr. 84).

**II.     Analysis**

Plaintiff presents six arguments as grounds for reversal. As stated by Plaintiff, they are: (1) the ALJ failed to properly apply the standard for past relevant work; (2) the ALJ's conclusions about Gonzalez's fibromyalgia are contrary to 12-2p and Eleventh Circuit precedent; (3) the ALJ failed to consider Plaintiff's obesity; (4) substantial evidence does not support the RFC; (5) the ALJ did not allow Plaintiff's attorney to cross examine the vocational expert about Plaintiff's need for breaks; and (6) the Appeals Council failed to apply the correct legal standard when evaluating newly submitted evidence. (Doc. 22 p. 13, 15, 19, 20, 21, 22). The Court begins with Plaintiff's first argument.

**(a) Whether the ALJ erred by failing to properly apply the standard for past relevant work.**

Plaintiff argues that the ALJ erred by finding that she can return to past relevant work as floral designer, private investigator, and merchant patroller because she did not perform any of these jobs at the substantial gainful activity level. (Doc. 22 p. 13). Plaintiff acknowledges that the ALJ made an alternative finding that Plaintiff can perform other jobs given her limited light RFC, but contends that substantial evidence does not support the ALJ's finding. (Doc. 22 p. 14). Defendant does not argue that the ALJ properly found Plaintiff could return to her past relevant work. (Doc. 25 p. 17). Instead, Defendant contends that the ALJ's alternative step five finding was supported by substantial evidence because it was based on the testimony of a VE elicited in response to a hypothetical question that comprised all of Plaintiff's limitations. (Doc. 25 p. 17).

In this case, even if the ALJ erred at step four by incorrectly finding that Plaintiff could return to past relevant work, given the ALJ's alternative finding at step five, the salient issue is whether substantial evidence supports the ALJ's step five finding. As Plaintiff does not challenge the VE's testimony, rather, only that the ALJ's hypothetical question did not completely

encompass Plaintiff's limitations, the Court must determine if the ALJ's RFC determination is supported by substantial evidence. The Court turns to that issue below.

### (b) Whether the ALJ properly considered Plaintiff's fibromyalgia and obesity and, in the alternative, whether substantial evidence supports the ALJ's RFC determination.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Commissioner of Social Security*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Commissioner of Social Security*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Further, in order to be entitled to disability insurance benefits under Title II of the Act, a claimant must establish that he became disabled on or prior to the expiration of his insured status. *See* 20 C.F.R. §§ 404.315; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting that a claimant must prove he was disabled on or before the date last insured for DIB).

### (1) Whether substantial evidence supports the ALJ's assessment of fibromyalgia.

Plaintiff contends that the ALJ erred by failing to properly apply Social Security Ruling 12-2p and Eleventh Circuit case law by ignoring the longitudinal record and by finding that evidence supporting Plaintiff's alleged degree of pain is outweighed by other normal findings, such as lack of edema, lack of muscle weakness, and normal motor strength, balance, gait, stance,

and reflexes. (Doc. 22 p. 16). Plaintiff notes that all of the medical opinions of record indicate that Plaintiff's fibromyalgia limits her to a sedentary RFC, which requires no more than two hours of walking and standing. (Doc. 22 p. 16). In response, Defendant contends that the ALJ fully considered the relevant evidence relating to Plaintiff's fibromyalgia and properly found that Plaintiff's condition was not as limiting as alleged. (Doc. 25 p. 4-5).

Here, the Court finds that the ALJ did not err in his treatment of Plaintiff's fibromyalgia. The ALJ acknowledged the evidence of record documenting Plaintiff's diagnosis of fibromyalgia and found this condition to be a severe impairment. A diagnosis of fibromyalgia, however, does not automatically lead to a finding of disability. *See, e.g.*, *Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 657 (11th Cir. 2013). When assessing the claimant's RFC, even when fibromyalgia is diagnosed, "a diagnosis or mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, functional limitations determine disability. *Moore*, 405 F.3d at 1213 n.6.

In his decision, the ALJ found that the evidence regarding fibromyalgia did not indicate Plaintiff's condition was as limiting as alleged. For example, treatment notes documenting Plaintiff's complaints reflect Plaintiff failed to mention this condition or related symptoms on numerous occasions. (Tr. 425, 429, 433, 437, 439, 442, 446, 449, 458, 462, 463, 488, 526, 538, 565, 582). The ALJ noted that despite her complaints, Plaintiff did not exhibit significant physical limitation on examination. (Tr. 35-36). Examination findings revealed Plaintiff had normal gait, station, and stance (Tr. 285, 287, 357, 427, 435, 444, 451, 456, 459, 490, 493, 507, 584), there was

full range of motion on most occasions (Tr. 423, 487, 495, 576), and Plaintiff had normal strength/no weakness. (Tr. 280-82, 285, 423, 427, 490, 494, 576, 584).

The ALJ evaluated Plaintiff's subjective complaints and found them not entirely credible, providing additional support for his RFC finding, including his assessment of fibromyalgia. The ALJ noted that Plaintiff reported improvement with treatment, including physical therapy, and that Plaintiff was not using medications on a regular basis. (Tr. 35, 540, 546). In addition, Plaintiff indicated that her pain was mild on numerous occasions. On a scale of zero to 100, Plaintiff rated her pain as zero (Tr. 426, 430, 437, 440, 447, 450, 463, 489), two (Tr. 458), or 25. (Tr. 407). Further, the ALJ remarked that there were inconsistencies between Plaintiff's allegations concerning her limitations and her activities of daily living. (Tr. 37). Plaintiff stated that she had custody of her two grandchildren and spent her day caring for them and performing household chores. (Tr. 53, 509). The record indicates Plaintiff was able to perform activities of daily living independently, drive, socialize in her home, and watch movies. (Tr. 60, 218, 492, 503, 509). The ALJ found these activities were inconsistent with Plaintiff's complaints of disabling pain. (Tr. 36).

In addition, the ALJ found that the July 2011 opinion of state agency medical consultant Mary Seay, M.D., and the January 2013 opinion of examining medical consultant Robert Shefsky, M.D., supported a light to almost medium RFC. (Tr. 36, 413, 498). These medical opinions provide further support to the ALJ's RFC finding and his treatment of Plaintiff's severe impairment of fibromyalgia.

Contrary to Plaintiff's claim, the Court finds that the ALJ did not violate SSR 12-2p. Social Security Ruling 12-2p pertains to what an individual must show to establish her fibromyalgia constitutes a medically determinable impairment. Social Security Ruling 12-2p further provides that before an ALJ finds a person with fibromyalgia is disabled, the ALJ should "ensure there is

sufficient objective evidence to support a finding that the person's impairment(s) so limit the person's functional abilities that it precludes him or her from performing any substantial gainful activity." Here, the ALJ found that Plaintiff's fibromyalgia was a medically determinable impairment by finding it to be a severe impairment at step two. The ALJ proceeded in the sequential evaluation process and explained his reasoning for finding that Plaintiff maintained the ability to work despite her diagnosis of fibromyalgia. As noted above, a diagnosis of fibromyalgia, however, does not automatically lead to a finding of disability. *See, e.g.*, *Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 657 (11th Cir. 2013). The ALJ considered Plaintiff's fibromyalgia properly at each step of the sequential evaluation process in accordance with SSR 12-2p.

**(2) Whether substantial evidence supports the ALJ's assessment of obesity.**

Plaintiff argues that the ALJ erred by failing to mention Plaintiff's obesity and to consider the extent to which Plaintiff's obesity provided a basis for Plaintiff's statements and the medical opinions. (Doc. 22 p. 20). Accordingly, Plaintiff contends, substantial evidence does not support the ALJ's adverse credibility finding, the rejection of the medical opinions, and the ALJ's RFC finding. In response, Defendant argues Plaintiff failed to raise obesity as an impairment and has failed to show that her obesity imposed greater limitations on her ability to work than found by the ALJ. (Doc. 25 p. 12-13).

As stated above, an ALJ must carefully weigh all relevant evidence, and "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990). When a claimant alleges obesity, the ALJ must consider the claimant's obesity, "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work

environment[, and] … [t]he combined effects of obesity with other impairments." Social Security Ruling 2-01, 2000 WL 628049 (S.S.A. 2000).

As an initial matter, Defendant is correct in asserting that Plaintiff failed to claim that her obesity was a basis for her alleged disability and that Plaintiff failed to testify at her hearing that obesity affected her functioning. Plaintiff's failure to assert that obesity was the basis for her disability suggests that remand is inappropriate. *See Biesty v. Astrue*, 2011 WL 4424442, at *4 (M.D. Fla. Sept. 22, 2011) (collecting cases where the court held that an ALJ did not err in failing to specifically consider a claimant's obesity when the claimant did not allege any limitations in function due to obesity in the application or at the hearing).

In any event, Plaintiff has failed to show that her obesity imposes limitations greater than found by the ALJ. The fact that Plaintiff was diagnosed with obesity does not necessarily entail that this condition caused work-related limitations. *See Wind*, 133 F.App'x at 690. Plaintiff relies on the fact that two doctors counseled her to lose weight on three occasions (Tr. 444, 452, 460) as evidence showing her obesity caused functional limitations. These recommendations, however, do not entail that these doctors believed Plaintiff's obesity specifically caused limitations beyond those assessed by the ALJ. Likewise, Plaintiff contends that the opinions of Drs. Baldinger and Shefsky provide support that her obesity causes additional functional limitations. (Doc. 22 p. 20). While these physicians found that Plaintiff had physical limitations, as the ALJ discussed in his opinion, neither doctor mentioned obesity as a basis for their opinions, despite each having examined Plaintiff in person and noting her height and weight. *See e.g.* (Tr. 493, 522). Plaintiff failed to allege that her obesity was a disabling impairment in her application and during her hearing. She has failed on appeal to show that her obesity causes limitations greater than those assessed by the ALJ.

It is Plaintiff's burden to prove the extent of her limitations by producing such evidence in support of her claim. Plaintiff has failed to show that the ALJ erred in considering and accounting for Plaintiff's fibromyalgia and obesity in the RFC determination. Accordingly, the Court finds no basis for reversal on this claim.

### (c) Whether the ALJ erred by not allowing Plaintiff's attorney to cross examine the VE about Plaintiff's need for breaks.

Plaintiff argues that the ALJ erred by preventing her attorney from pursuing a line of questioning with the VE as to whether Plaintiff could work if she required breaks of varying times. (Doc. 22 p. 21). Plaintiff argues that the ALJ also did not allow a question about the maximum length of break that an employer would tolerate. (Doc. 22 p. 21). In response, Defendant argues that Plaintiff's attorney was given the opportunity to cross examine the VE and did so. (Doc. 25 p. 15). Defendant argues that Plaintiff has failed to show that her due process rights were violated to such an extent as to require remand. (Doc. 25 p. 16).

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The ALJ "shall allow the parties or their designated representatives" to ask the witnesses any questions material to the issues. 20 C.F.R. § 404.950(e). Although the ALJ has a duty to develop the record, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

Here, the Court finds that the ALJ did not violate Plaintiff's due process rights by preventing her attorney from pursuing a line of questioning at the administrative hearing. At the hearing, the ALJ requested Plaintiff's attorney to present questions in a hypothetical form, as it appears the ALJ disliked the incremental nature of Plaintiff's attorney's questions. (Tr. 77-78).

After the ALJ made this request, Plaintiff's attorney abandoned this line of questioning. (Tr. 78).

The transcript makes this clear:

> Q Okay. What are the tolerable work breaks in the three jobs you identified?
>
> A Approximately 10 to 15 minutes, the first part of the shift because I don't know what shift we're talking about [INAUDIBLE] 24 hour period on some occasional jobs, so beginning of the shift of eight hours, 15 minutes in the first half. Then a lunch or dinner break, 30 minutes to 50 minutes, and the latter part of the shift, 10 to 15 minute break.
>
> Q If the individual needed an additional five minutes in addition to all of these breaks would that preclude work activity?
>
> A No, ma'am.
>
> Q How about 10 additional minutes?
>
> A One time?
>
> ALJ: Wait, wait, wait, excuse me. Ms. Nutrum, if you've got a hypothetical based on the evidence, even the testimony of the documented evidence, if you present it I'd really appreciate it but what about five minutes, what about 10 minutes, what about 15 minutes, no if you just give a hypothetical to the vocational expert?
>
> ATTY: Judge, the break question is generally considered hypothetical but I'll move on.

(Tr. 77-78).

When Plaintiff returned to this line of questioning later during the hearing, the following exchange occurred:

> Q And, what are the tolerable breaks in these jobs? Are they the same as the ones you identified earlier?
>
> A Yes.
>
> Q Could you tell me, what's the point in the breaks that it becomes intolerable? How much additional, if you could?

- 13 -

ALJ: I think that's going back to the same questions that we previously addressed. No breaks, then a five minutes over break and then attempting to move into a -- 10 to 15, 20 minute breaks. The answer was previously given to a five minute break, so -- what -- is there a specific question --

ATTY: Judge, I'm asking at what point breaks become intolerable.

ALJ: What is that based on? Is that based on evidence in the record, testimony?

ATTY: She testified she has to constantly shift. There's no comfortable position, yes.

ALJ: Okay, but you -- that's different from breaks, that's different. Now, a break -- has been already discussed -- traditional breaks, what that would be. Okay, fine, what if you asked the question, what if they're five minutes late, that's been addressed. Now, do you want to ask if it's 10 minutes or 15 minutes?

ATTY: I'm asking her if she knows what's the tolerable limit, like would they say okay, five minutes is tolerable, anything over that is not tolerable in addition to these breaks, if she knows? She may not know.

ALJ: And you may not even need to ask a question like that unless you have a basis for it. Do you have a basis for it?

ATTY: Once again, the testimony and the evidence, judge. She has mental problems; this is a physical case as well.

ALJ: But what is it about the breaks? You know, that's what we're talking about. Is there -- well, Ms. Roche.

VE: Yes, your honor.

ALJ: Okay. This is a question that has been addressed previously and answered previously but the attorney is now asking -- if there's a specific or if it varies, is there a specific -- how does it work with regard to breaks?

**Examination of Vocational Expert by Administrative Law Judge**

Q Is it occasional, is it continuously and repetitive, how does it work if a person is late from a break, if it's -- how is it addressed?

A [INAUDIBLE] looked at being off task as well.

**Examination of Vocational Expert by Claimant's Attorney**

> Q Okay, if the individual could only work four hours a day would that preclude all work?
>
> A Yes, ma'am.
>
> ATTY: I don't have any further questions, judge.

(Tr. 82-84). The Court does not find a due process violation, here. The ALJ noted during the hearing that Plaintiff's contention that frequent changes in position indicate a need for breaks inaccurately equates two different limitations. The ALJ permitted the VE to be questioned regarding breaks, and at the end of Plaintiff's cross examination of the VE, Plaintiff's attorney stated "I don't have any further questions, judge." (Tr. 83). Plaintiff has failed to show that she was prejudiced by the ALJ's actions during the administrative hearing. Accordingly, the Court finds no basis for remand on this claim.

### (d) Whether the Appeals Council erred by failing to apply the correct legal standard when evaluating newly submitted evidence.

Plaintiff argues that the Appeals Council erred when it found that the evidence Plaintiff submitted after the ALJ's decision was "about a later time" and that "[t]herefore, it does not affect the decision about whether you were disabled on or before September 20, 2013." (Doc. 22 p. 22). Plaintiff contends that the Appeals Council should not have applied a strict deadline to find that the post-dated evidence did not relate to the period at issue. (Doc. 22 p. 22). In response, Defendant argues that the Appeals Council applied the correct legal standard when evaluating the post-dated evidence and Plaintiff has failed to show that the newly submitted evidence related to the period at issue or would alter the ALJ's opinion. (Doc. 25 p. 20).

A claimant is generally permitted to present new evidence at each stage of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007). Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four

analysis. *Id*. "The Appeals Council must consider new, material evidence, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id*. (citing 20 C.F.R. §§ 404.970(b)). New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011) (citing *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's decision. *See Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

Here, Plaintiff has failed to show that the evidence submitted to the Appeals Council was material or chronologically relevant. The evidence Plaintiff submitted to the Appeals Council is dated October 2013, June 2014, and October 2014, ranging over a month to a year after the ALJ's decision. Plaintiff presents no argument explaining how this evidence would alter the ALJ's findings or even how this post-dated evidence relates to the time period in question. The Appeals Council properly determined that the new evidence did not provide a basis for changing the ALJ's decision and denied Plaintiff's request for review. (Tr. 1-6).

### III.   Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 16, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

- 17 -

Copies furnished to:

Counsel of Record
Unrepresented Parties